Curtis Ray HOWARD v. STATE of Arkansas

CR 85-78                                     727 S.W.2d 830

Supreme Court of Arkansas
Opinion delivered April 13, 1987

*Appellant*, pro se.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for respondent.

PER CURIAM. In 1983 two masked men robbed a Kroger store in Little Rock. One held a pistol and stood guard at the checkout counter while the other vaulted over a twelve-inch rim of glass atop the nearby office booth, aimed a pistol at the manager's head and took $2,568.00 in cash. Later that night, George Moore was identified as the robber who stood guard. He was arrested and subsequently pleaded guilty.

Witnesses in the store stated that the robber who vaulted into the booth did so by placing his hand on the glass rim of the office both and pivoting over it. Jim Beck, an expert in fingerprint identification, compared the latent prints left on the glass with

petitioner Curtis Ray Howard's known fingerprints. He positively identified one of the latent prints as being made by petitioner. In addition, he testified that the latent print was made by a person exerting a twisting pressure on the glass, as distinguished from someone placing his or her hand on it in a normal manner such as might occur in the course of ordinary business at the store. One of the store employees who witnessed the robbery testified that petitioner fit the description of the robber who vaulted into the booth, although he could not identify petitioner as the robber.

Petitioner was found guilty by the jury of aggravated robbery and theft of property and sentenced as an habitual offender to consecutive terms of life imprisonment and twenty years. We affirmed. *Howard* v. *State*, 286 Ark. 479, 695 S.W.2d 375 (1985). Petitioner has now filed a forty-page petition seeking postconviction relief pursuant to Criminal Procedure Rule 37. For the sake of clarity, the allegations, most of which are refuted by the trial record, will be discussed one-by-one as petitioner has stated them.

1.

*Petitioner was denied a speedy trial and counsel was ineffective for not filing a motion to dismiss the charges on the ground that petitioner's right to a speedy trial had been violated. Counsel also failed to assist petitioner when petitioner raised the speedy trial issue himself in a pre-trial hearing.*

The record indicates that the information charging petitioner with robbing the Kroger store was filed in circuit court on April 2, 1984. He was arrested April 12, 1984 and tried on January 10, 1985. Petitioner was incarcerated on other charges during the nine months and eight days he was awaiting trial. From September 13, 1984 through October 3, 1984, he underwent a psychiatric examination at the Arkansas State Hospital.

Criminal Procedure Rule 28.1(b) provides that any defendant charged with an offense in circuit court and incarcerated in prison in this state pursuant to conviction of another offense shall be entitled to have the charge against him dismissed with an absolute bar to prosecution if not brought to trial within twelve months from the time provided in Criminal Procedure

Rule 28.2, excluding periods of delay authorized in Rule 28.3. Petitioner did not contend in the trial court, and does not now contend, that he was not incarcerated while awaiting trial or that the time spent at the State Hospital was not an excluded period under Rule 28.3. His argument was based on his belief that the calculation of the time for a speedy trial commences running at the date the crime was committed or the date of arrest. Rule 28.2(a), however, provides that the time begins to run when the charge is filed in circuit court. As petitioner was tried within twelve months in accordance with Rule 28.2(a), he was afforded a speedy trial, even if the time he was committed to the State Hospital is not considered. If the time in the State Hospital is considered, petitioner was tried within nine months of the date the charge was filed in circuit court.

2.

*Counsel and the prosecutor conspired to obtain an order compelling petitioner to undergo a psychiatric examination at the Arkansas State Hospital so that counsel could enter a plea of not guilty on behalf of the petitioner. Instead of permitting petitioner to plead guilty, counsel should have filed a petition for writ of prohibition on the ground that petitioner had been denied a speedy trial.*

An allegation of ineffective assistance of counsel must be supported by facts sufficient to demonstrate that the petitioner suffered some actual prejudice. *Neff* v. *State*, 287 Ark. 88, 696 S.W.2d 736 (1985). Petitioner has not shown that he was denied his right to a speedy trial or that he suffered any prejudice as a result of being committed to the State Hospital for a competency examination.

3.

*Counsel did not support petitioner on his motion for continuance based on medical evidence that he had been assaulted by officers at the jail and was on pain-relieving medication as a result.*

Petitioner said in a pre-trial motion for continuance that he had been assaulted by the officers who took his fingerprints at the county jail and was on medication for pain. The trial court

inquired about the medication and determined that a nurse at the jail had given petitioner some Tylenol and aspirin "or something of that nature." He alleges that he was forced to go to trial "absent his wit and in severe pain," but his frequent colloquies with the court and his coherent, if ill-reasoned, defense of his numerous pro se motions belies the allegation. He has clearly presented nothing in this petition to show that a continuance should have been granted.

4.

*Counsel should have sought pre-trial dismissal of the indictment on the grounds that the only evidence offered at the omnibus hearing was one fingerprint taken from a public place.*

We held on appeal that the fingerprint identification in petitioner's case constituted substantial evidence of his guilt. Petitioner has not demonstrated that there was any ground on which counsel could have secured dismissal of the indictment at the omnibus hearing.

5.

*Counsel was ineffective in that he did not challenge the testimony of fingerprint expert Jim Beck on the ground that Beck was not the one who had conducted the fingerprint comparison at the state crime lab.*

The record does not support the allegation. Beck testified that he was the one who made the comparison and petitioner alludes to no proof that this was not true.

6.

*Counsel failed to file a pre-trial motion for discovery.*

As petitioner does not explain what evidence was withheld from discovery or its significance, the allegation does not warrant postconviction relief. *Smith* v. *State*, 264 Ark. 329, 571 S.W.2d 591 (1978).

7.

*Counsel should have objected to the testimony of one of the store's employees that petitioner was similar in appearance to*

*one of the robbers because the prosecutor suggested the similarities to him on direct examination. Also, the employee had seen petitioner in previous lineups. It was wrong for the prosecutor to have him stand up so that the witness could see whether he fit the general description.*

■ The prosecutor asked the witness to describe the robbers' dress and general appearance and inquired as to whether petitioner looked similar. The witness was unable to make an in-court identification of petitioner as one of the robbers and said that he had been unable to pick petitioner from a lineup. Petitioner does not specify which questions were improper, and the general allegations that there were grounds for counsel to object to the questions and that he should not have been asked to stand are not enough to demonstrate that counsel was ineffective.

8.

*Counsel failed to object to the prosecutor's reading part of the statement made by co-defendant Moore when Moore pleaded guilty until after the jury had already heard it. Further, the contents of the statement had not been disclosed to the defense.*

■ Petitioner's co-defendant Moore testified in petitioner's behalf that he (Moore) and a man named Robert Lofton had robbed the Kroger store. The prosecutor sought to impeach Moore with a transcript of statements Moore made when he pleaded guilty. At that time, Moore had not mentioned Lofton and had given a somewhat different account of the robbery. Counsel for petitioner objected that the prosecutor was reading from an incomplete transcript of the proceedings. Since Moore was a witness for the defense, it is reasonable to assume that counsel was aware that Moore had pleaded guilty in the case. It was not improper for the state to inquire as to whether Moore had made a prior statement inconsistent with his testimony. A.R.E. Rule 801(d)(1)(i).

9.

*Counsel should have objected when the prosecutor told the jury that petitioner had talked to Moore while they were together in prison.*

640

The record negates the allegation. The prosecutor was careful to avoid asking Moore any questions which would have revealed that petitioner had been in prison.

10.

*Counsel should have objected to the judge's writing a note to the jury during its deliberations when state law provides that questions from the jury be answered in open court.*

While the jury was deliberating, it sent a note to the judge by way of the bailiff which said, "Is the fine necessary?" With the agreement of both the state and defense counsel, the judge wrote a note in return which said, "No. It is only an alternative." Arkansas Statutes Annotated § 43-2139 (Repl. 1977) and Criminal Procedure Rule 33.4 require that questions from the jury be answered in open court, but this is not to say that counsel in petitioner's case was ineffective for not objecting under the standards of Rule 37 for judging effective assistance of counsel as set out by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668 (1984). To prove ineffective assistance of counsel under *Strickland*, a petitioner must show that counsel's performance was deficient in that counsel made an error so serious that he was not functioning as the "counsel" guaranteed by the sixth amendment to the Constitution. Second, the deficient performance must have resulted in prejudice so pronounced as to have deprived the petitioner of a fair trial whose outcome cannot be relied on as just. Even if counsel could have made a meritorious objection, the judgment must stand, unless the petitioner demonstrates that the failure to object had a prejudicial effect on the outcome of the trial. A reasonable probability that but for counsel's conduct the result of the proceeding would have been different is a probability sufficient to undermine the confidence in the outcome. *Strickland* v. *State, supra*; *Gunn* v. *State*, 291 Ark. 548, 726 S.W.2d 279 (1987). Since the judge in this case relayed no information of substance to the jury, we cannot say that the outcome of petitioner's trial was affected by counsel's failure to object.

## 11.

*The trial court was wrong to accept the testimony of witnesses Beck and Jones concerning the fingerprint evidence because the testimony was hearsay and circumstantial. The evidence was not admissible under Rule 401 of the Uniform Rules of Evidence which defines "relevant evidence" or admissible under Rule 801 which defines "hearsay." This court's recent holding in Ricarte v. State, 290 Ark. 100, 717 S.W.2d 488 (1986), which concluded that the Uniform Rules of Evidence were not validly adopted by the legislature in 1976, renders the judgment in his case invalid.*

*Ricarte* does not provide a remedy unless the issue of the validity of the Uniform Rules of Evidence was raised in the trial court. *Halfacre* v. *State*, 290 Ark. 312, 718 S.W.2d 945 (1986). This was not done at petitioner's trial. Rule 37 is not available as a direct challenge to the admissibility of evidence or to raise questions of trial error. *Swisher* v. *State*, 257 Ark. 24, 514 S.W.2d 218 (1974). Even questions of constitutional dimension must be raised in the trial court in accordance with the controlling rules of procedure, or else the issues are waived, unless they are so fundamental as to void the judgment absolutely. *Orsini* v. *State*, 287 Ark. 456, 701 S.W.2d 114 (1985). Evidentiary questions are not sufficient to void a judgment.

## 12.

*Petitioner was not afforded the effective assistance of counsel on his motion for new trial.*

After he was convicted, petitioner filed a timely *pro se* motion for new trial, raising claims of error on the part of the trial court and ineffective assistance of counsel. The trial court appointed Rick Holiman to represent him on the motion. At a hearing on the motion, Holiman was granted one week to confer with petitioner and file a supplemental motion if one was needed. The record does not indicate that a supplemental motion was filed and there is no order in the record disposing of the *pro se* motion. Petitioner now alleges that Holiman was ineffective for the following reasons: (1) he did not support the *pro se* motion for new trial; (2) he did not attempt to obtain fingerprint evidence

confiscated by the prosecutor and the public defender; and (3) he did not obtain newly discovered evidence in the form of conflicting reports on the fingerprint evidence. Petitioner offers no persuasive factual substantiation for either the allegation that the prosecutor and public defender confiscated evidence or the claim that there was newly discovered evidence concerning the fingerprints. Allegations which are not supported with facts which demonstrate prejudice to the defendant are not grounds for postconviction relief. *Henderson* v. *State*, 281 Ark. 406, 664 S.W.2d 451 (1984).

It should be noted that petitioner's motion for new trial raised several issues which had already been settled in the trial court and which were not cognizable in a motion for new trial. The remaining allegations which concerned ineffective assistance of counsel were conclusory in nature and fell far short of establishing that counsel was ineffective.

In response to petitioner's assertion that he was denied effective assistance of counsel on his motion for new trial, the State argues that a motion for new trial is a collateral proceeding and thus the petitioner was not entitled to effective assistance of counsel. We do not agree. The sixth amendment guarantee of effective assistance of counsel extends not only to trial but also to appeal where the state allows a first appeal as a matter of right. *Evitts* v. *Lucey*, 469 U.S. 387 (1985). Arkansas permits a first appeal as a matter of right. Ark. Stat. Ann. § 43-2701 (Repl. 1977); Criminal Procedure Rule 36.1. Although a motion for new trial is no longer a requisite for appellate review, *Finch* v. *State*, 262 Ark. 313, 556 S.W.2d 434 (1977), the motion, which must be made within the time for filing a notice of appeal, is clearly an extension of the trial proceeding. As such, a convicted defendant has the right to effective assistance of counsel in accordance with the sixth amendment.

Counsel is presumed effective and the burden of overcoming that presumption rests on the petitioner who must establish with factual support for his allegations that counsel's conduct undermined the adversarial process and resulted in prejudice sufficient to deny him a fair trial. *Pride* v. *State*, 285 Ark. 89, 684 S.W.2d 819 (1985); *see also Strickland* v. *Washington, supra*. The allegations in the motion for new trial, which are

repeated in the instant petition for postconviction relief, were not sufficient to show that he was entitled to a new trial. This fact, coupled with the petitioner's failure to allude to anything Holiman should have raised which would have been helpful to the defense, leads to the conclusion that petitioner suffered no prejudice sufficient to affect the outcome of the proceedings against him.

Petitioner has filed a motion to amend the instant petition. The motion to amend is a restatement of many of the allegations in the petition with the additional assertion that counsel was ineffective on appeal because he raised only one issue, the sufficiency of the evidence. We have found no merit to the allegations raised in the petition. With regard to the allegation that counsel was ineffective on appeal, the United States Supreme Court has not yet stated the criteria for determining the effectiveness of an attorney on appeal, *Evitts* v. *Lucey, supra*, but it may be assumed that the petitioner would at the least be required to make a clear showing that counsel failed to raise some possibly meritorious issue. Petitioner has not met that burden. An attorney need not advance every argument, regardless of merit, urged by his client. *See Jones* v. *Barnes*, 463 U.S. 745 (1983).

Petition and motion to amend denied.

HICKMAN and PURTLE, JJ., concur.

DARRELL HICKMAN, Justice, concurring. I would also deny the petition. I write separately to address the growing problem of innumerable Rule 37 petitions which we are receiving and the unlimited arguments made, which simply attempt to retry a case.

The original opinion in this case was a page and a half. *Howard* v. *State*, 286 Ark. 479, 695 S.W.2d 375 (1985). The petition filed for Rule 37 relief is 40 pages. This majority opinion denying Rule 37 relief is nine pages long. The petitioner, like too many seeking postconviction relief, wants not only a second review of his conviction but also an examination of every possible objection, no matter how ridiculous. Recently a postconviction relief petition was filed of a hundred pages. Twenty and thirty page petitions are not uncommon.

The postconviction proceeding is becoming a legal system unto itself, beginning with us and our trial courts and winding its

way through the federal system. It has become an expensive and time consuming part of the criminal justice system. Mostly it is an exercise to see if the legal system will trip itself; guilt or innocence of the crime is usually irrelevant. To insure that a mistake was not made in the conviction, we are required to examine unlimited allegations. This is all after a trial and after a complete review of the conviction. In effect a system for a second appeal is becoming instituted.

We would not tolerate this situation from lawyers and should not from inmates who generally either file their petitions *pro se*, or with the assistance of a writ-writer. A writ-writer is an inmate that prepares legal petitions and documents for other inmates. (It is ironic that an inmate can practice law without a license while other citizens cannot.) I would place a limit on the number of pages a petition may contain — just as there are limits on pages regarding briefs for appeal. Even a brief in a capital case is limited to 25 typed pages unless permission is obtained to exceed that number.

Five pages for a postconviction petition is a reasonable figure. If a person cannot find a legitimate error and explain it in five pages, it doesn't merit consideration. After all, we have other demands on our time and judgment. Of course, inmates often, not unlike some lawyers they emulate, hold no expectations that one or any argument has merit; they produce dozens and ask us to find one. I say it has gone too far.

JOHN I. PURTLE, Justice, concurring. I agree with the separate concurrence that it is time consuming to read through and study the petitions filed pursuant to Rule 37. However, since that task is a requirement of my judicial position, it is a duty I must perform. Moreover, I doubt that there are more than a few such petitions filed for the purpose of enlarging the workload on the courts.

In my opinion it would be a denial of equal protection and due process to deny appellants the right to have fellow inmates assist in preparing writs to be presented to the courts. Other persons, even lawyers, are not prohibited from receiving help from persons who are not lawyers.

If it takes a little extra trouble and work to insure a better

chance of achieving justice, then so be it. Our system of justice itself should be constantly on trial. To paraphrase Benjamin Franklin — a society that gives up a little liberty to obtain a little order deserves neither. I had rather face a good deal more work in order to preserve a little liberty than have a lot less work and a little less liberty.