Robert TUCKER *v.* STATE of Arkansas

CA CR 93-1224                                   901 S.W.2d 865

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 1995

*Robert P. Remet*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. The appellant Robert Lee Tucker, Jr., was found guilty by a jury of burglary and sentenced to a fine of $2,000.00.

This is the second time this case has been before us. In the previous appeal, appellant's counsel filed a no-merit brief and a motion asking to be relieved as counsel. In *Tucker* v. *State*, 47 Ark. App. 96, 885 S.W.2d 904 (1994), we denied counsel's motion to withdraw and remanded for rebriefing in adversary form. Counsel has now filed a brief in which he argues that the evidence is insufficient to support appellant's conviction.

At trial, Edward Watson testified that on August 2, 1992, he checked the residence of Gordon Kidd who was on vacation; discovered the door was unlocked; and because of some marks on the back of the house by the kitchen window, he went to the police. Officer Rickman returned to the house with Watson, checked around the side of the house and took prints off the window. They went inside; saw the window at the sink had been pried open; and saw a shoe print on the kitchen floor. They looked through the house, came back out, lifted some more prints around the window, and then left.

Officer Rickman testified that, when he arrived at the residence on August 2, he noticed a screen had been taken off a kitchen window; that he lifted several prints off the kitchen window; that he and Watson went around the residence; and that they noticed several footprints on the linoleum floor in the kitchen right in line with the counter as if someone had come through the window and walked across the kitchen floor. Officer Rickman said he took a large piece of tape, placed it over a shoe print, and lifted it. Officer Rickman testified that later that day, after he had seen appellant at Mays Grocery, the appellant came to the police department. Officer Rickman testified that while they talked the shoe print was on a desk about three or four feet from the appellant.

On August 5 Officer Rickman went to 909 South Kentucky Street to serve an arrest warrant on appellant. Appellant's aunt took the officer into a bedroom where appellant was asleep; awoke him; the officer told him that he had a warrant for his arrest; and appellant got up and began getting ready. Officer Rickman testified that he saw a pair of tennis shoes "sitting by the bed" but appellant did not put them on. Instead, appellant got a pair of tennis shoes out of a garbage bag of clothing that was near the bed. Later Tommy Sturgeon, Police Chief of Crossett, went to the residence to pick up the tennis shoes which were lying on the floor.

Donald Smith, qualified as an expert in his field of toolmark examiner, testified that he received a left shoe and a partial shoe print; that the shoe and print were relatively similar in size; that his examination results were inconclusive; and that he could not say with certainty "that shoe made that shoe print." He testified

further that because the shoe is a mass-produced shoe its sole is similar to every other sole on that particular type of shoe.

Ralph Turbyfill, an expert witness, testified that a palm print lifted from the window at the Kidd residence matched that of the appellant.

Gordon Kidd testified that when they returned home from vacation on August 5 they saw footprints in the kitchen, that several items were missing; and that none of the items had been recovered. He testified further that the appellant is his brother-in-law and lived in the house in 1991. Marcia Kidd testified appellant was in their home around July 14, 1992.

Appellant moved for a directed verdict at the close of the State's case, and at the conclusion of all the evidence, based on the alleged insufficiency of the evidence. The motions were denied, and on appeal he argues to us that the evidence is insufficient because his fingerprints were not found within the residence, and it was not possible to say that the footprint found inside the home was made by his shoes.

██ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *McIntosh* v. *State*, 296 Ark. 167, 753 S.W.2d 273 (1988). In resolving the question of the sufficiency of the evidence in a criminal case, we view the evidence in the light most favorable to the appellee and affirm if there is substantial evidence to support the decision of the trier of fact. *Ryan* v. *State*, 30 Ark. App. 196, 786 S.W.2d 835 (1990). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty and precision, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989); *Ryan, supra.* The fact that evidence is circumstantial does not render it insubstantial. *Small* v. *State*, 5 Ark. App. 87, 632 S.W.2d 448 (1982).

██ Fingerprints, under some circumstances, may be sufficient to sustain a conviction. *See Brown* v. *State*, 310 Ark. 427, 837 S.W.2d 457 (1992) (fingerprints found both on exterior window glass and inside the structure); *Howard* v. *State*, 286 Ark. 479, 695 S.W.2d 375 (1985) (fingerprint removed from exact place where robber was seen placing his hand as he vaulted into

booth); *Ebsen* v. *State*, 249 Ark. 477, 459 S.W.2d 548 (1970) (fingerprints on both sides of a plate glass window that had been broken in and propped up inside the store). However, fingerprints alone have been held to be insufficient. *See Standridge* v. *State*, 310 Ark. 408, 837 S.W.2d 447 (1992) (thumbprint found on disposable cup beside a tent that was several feet from marijuana plants is not enough where there was no evidence to suggest when or where the appellant had touched the cup, whether he had purchased it, or how it came to be near the marijuana); *Holloway* v. *State*, 11 Ark. App. 69, 666 S.W.2d 410 (1984) (fingerprints on piece of glass located outside the house where a burglary occurred are not enough).

In the instant case, a screen had been removed from the kitchen window; appellant's fingerprints were lifted from the kitchen window; there were footprints on the linoleum floor in the kitchen in line with the counter as if someone had come through the window and walked across the kitchen floor; and a footprint lifted from the kitchen floor was relatively similar in size to appellant's shoes. Moreover, there is evidence that appellant knew a footprint was obtained by the police and when he was arrested on another charge he retrieved a pair of shoes from a garbage bag filled with clothing rather than putting on the pair of tennis shoes which were "sitting by the bed."

We think all of these circumstances constitute substantial evidence from which the jury could find appellant committed burglary.

Affirmed.

JENNINGS, C.J., and COOPER, J., agree.