SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
No. CR–12–1027

| | | |
|---|---|---|
| CHARLES STUTTE | APPELLANT | Opinion Delivered February 26, 2014 |
| V. | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CR–2012–765] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE WILLIAM A. STOREY, JUDGE |
| | | AFFIRMED |

## BILL H. WALMSLEY, Judge

Appellant Charles Stutte appeals his convictions for driving while intoxicated (DWI) and resisting arrest. He argues that the warrantless arrest in his home violated the Fourth Amendment and that there was insufficient evidence of resisting arrest. We affirm.

Appellant filed a motion to dismiss in circuit court, arguing that his arrest constituted an unreasonable search and seizure because the arresting officer entered his home without a warrant or exigent circumstances.[1] The motion was heard in conjunction with appellant's bench trial.

Corporal Robert Hargus of the Fayetteville Police Department testified that on July 31, 2011, he was working as a selective traffic enforcement unit in the Mount Comfort area. He noted that, prior to the incident involving appellant, there had been some calls reporting loud parties in that area. Around 1:30 a.m. Sunday morning, Hargus observed appellant's car

---

[1]This motion was treated as a motion to suppress illegally obtained evidence.

SLIP OPINION

exceeding the speed limit and failing to maintain its lane. He saw the car move side to side, crossing onto the broken white line separating the lanes. Hargus then activated his recording device and followed the car. He saw the car twice move left over the double yellow line and subsequently move over the solid white fog line. Hargus testified that there was moderate traffic in the area at the time. Hargus activated his patrol lights, but the car did not pull over and continued on at the same speed. Hargus felt that the car could have safely pulled over because there were large open parking areas in the immediate vicinity.

When the car did not respond to his blue lights, Hargus activated his siren. Again the car did not pull over and continued traveling at the same pace. In a final attempt to get the car stopped, Hargus shined his spot light into the rear view mirrors of the car. Still, it did not pull over. Eventually, the car turned left onto another street, turned into a driveway, and parked in a garage that had just been opened. Hargus had unsuccessfully attempted to stop the car for more than a minute.

Hargus testified that appellant got out of his car and began walking towards the rear of the car. Hargus asked him to stop and said that he needed to talk to him. Appellant replied "what," and Hargus repeated his request to come talk to him. Appellant then replied "why" and turned to walk toward the interior door to the house. Hargus said that he stepped inside the garage, grabbed appellant's right arm, and told him to stop. Hargus said that he smelled a strong odor of intoxicants and observed that appellant was sweating. Appellant tugged his right arm, used profanities, and tried to walk away. Hargus said at that point he told appellant that he was under arrest for suspicion of drunk driving. Appellant struggled



when Hargus attempted to handcuff him. Appellant was charged with DWI, resisting arrest, violation of the implied-consent law, and careless driving.

Appellant argued that there were no exigent circumstances that would have allowed Hargus to enter his garage for a misdemeanor arrest. The circuit court found that there was probable cause for appellant's arrest, that there were exigent circumstances, and that driving while intoxicated was not a minor offense. The court found appellant guilty of all of the charges and merged the careless-driving count into the DWI conviction.

## I. *DWI*

A warrantless entry into a private home is presumptively unreasonable. *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999). The burden is on the State to prove that the warrantless activity was reasonable. *Id*. On appeal, this court will make an independent determination of the reasonableness of the warrantless arrest based on the totality of the circumstances. *Id*.

The United States Supreme Court held in *Payton v. New York*, 445 U.S. 573 (1980), that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. Exigent circumstances are those requiring immediate aid or action, and, while there is no definite list of what constitutes exigent circumstances, several established examples include the risk of removal or destruction of evidence, danger to the lives of police officers or others, and the hot pursuit of a suspect. *Steinmetz v. State*, 366 Ark. 222, 225, 234 S.W.3d 302, 304 (2006).

Appellant argues that Corporal Hargus entered his garage without probable cause or

SLIP OPINION

exigent circumstances in order to arrest him for a relatively minor offense. He argues that it was determined in *Norris* that DWI was a minor offense for Fourth Amendment purposes and that Hargus did not even have probable cause to arrest him for DWI prior to entering the garage. Appellant contends that two exigent circumstances alleged by the State below—the destruction of evidence and the danger of appellant returning to his car—were rejected in *Norris*.

In *Norris*, a citizen who observed the appellant driving erratically followed him home. The witness reported his observations to the police. Thereafter, the police went to the residence, gained entry, and arrested the appellant for DWI after locating him in his bedroom. The supreme court held that the warrantless home arrest was unreasonable under these circumstances. The *Norris* court relied on *Welsh v. Wisconsin*, 466 U.S. 740 (1984).

In *Welsh*, a witness saw the appellant driving erratically and ultimately driving off the road. The witness observed the driver abandon the car and walk away. He reported the incident to the police, and the police located an address by checking the vehicle registration. The police went to the address, entered the home, found the appellant in his bed, and arrested him for DWI. Thus, the facts of the *Norris* and *Welsh* cases are clearly and strikingly distinguishable from the case at bar.

Probable cause to arrest is defined as "a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that a crime has been committed by the person suspected." *Hilton v. State*, 80 Ark. App. 401, 405, 96 S.W.3d 757, 760 (2003). Probable cause to arrest does not require the quantum of proof

necessary to support a conviction, and in assessing the existence of probable cause, the appellate court's review is liberal rather than strict. *Id*. We look to the facts within the arresting officer's knowledge—not his stated reasoning—to determine whether those facts are sufficient to permit a person of reasonable caution to believe that an offense has been committed. *Banks v. State*, 2010 Ark. App. 383.

If a person knows that his immediate detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of the person to refrain from fleeing, either on foot or by means of any vehicle or conveyance. Ark. Code Ann. § 5-54-125(a) (Supp. 2011). Although appellant was not charged with fleeing, Corporal Hargus's testimony that appellant ignored his blue lights, siren, and spot light provides probable cause that appellant committed the offense of fleeing. Fleeing by means of any vehicle is considered a Class A misdemeanor, for which the sentence shall not exceed one year. Ark. Code Ann. § 5-54-125(d)(1)(A); Ark. Code Ann. § 5-4-401(b)(1) (Repl. 2013). However, the fleeing statute provides that a person convicted of fleeing in a vehicle shall serve a minimum time in jail. Ark. Code Ann. § 5-54-125(d)(1)(B).

The Supreme Court held in *Welsh* that "the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." *Welsh*, 466 U.S. at 754 n.14. *Welsh* involved first-offense DWI, which in Wisconsin was a noncriminal violation for which no imprisonment was possible. The *Norris* court held that the penalties imposed for first-offense DWI in Arkansas were sufficiently similar to those penalties in *Welsh* to conclude that

the offense was a relatively minor offense in Fourth Amendment analysis. The *Norris* court noted that while first-offense DWI carries a penalty of imprisonment from one day to one year, the court may order public service in lieu of jail. Ark. Code Ann. § 5-65-111(a)(1)(B). Fleeing, on the contrary, requires that the offender serve time in jail.

The facts of this case are further distinguishable from *Norris* and *Welsh* because the police here were in hot pursuit of a suspect. Appellant relies on *Butler v. State*, 309 Ark. 211, 829 S.W.2d 412 (1992), in arguing that hot pursuit involving a minor offense does not constitute an exigent circumstance. The offense in *Butler*, however, was disorderly conduct, which our supreme court noted was a Class C misdemeanor. Butler summoned the police to his home and spoke with an officer on his porch before communication "deteriorated." Butler then re-entered his home and the officer followed, announcing that he was under arrest. Our supreme court held that, under these circumstances, there is no exigent circumstance that would allow the warrantless entry into the home for "what is concededly, at most, a petty disturbance." *Id.* at 217, 829 S.W.2d at 415. The circumstances and the offenses involved here clearly distinguish this case from *Butler*.

In addition to the traffic offenses and fleeing that Hargus personally observed, he had a reasonable suspicion that appellant was driving while intoxicated, which justifies a stop under Rule 3.1 of the Arkansas Rules of Criminal Procedure. *Murrell v. State*, 2011 Ark. App. 311. Hargus testified that appellant's driving, the time of day, the day of the week, and the previous complaints of parties in the general area formed his suspicion. Furthermore, appellant had ignored Hargus's efforts to get him to stop. When considering the totality of

SLIP OPINION

the circumstances, the State had a strong interest in precipitating appellant's arrest.

In reviewing the trial court's denial of a motion to suppress evidence, we make an independent examination based upon the totality of the circumstances and reverse only if the decision is clearly against the preponderance of the evidence. *Hilton v. State*, 80 Ark. App. 401, 96 S.W.3d 757 (2003). We hold that, under the circumstances, the trial court's decision in concluding that the warrantless arrest was reasonable was not clearly against the preponderance of the evidence. We affirm the denial of appellant's motion to dismiss.

## II. *Resisting Arrest*

A person commits the offense of resisting arrest if he or she knowingly resists a person known by him or her to be a law enforcement officer effecting an arrest. Ark. Code Ann. § 5-54-103(a) (Repl. 2005). "Resists" means using or threatening to use physical force or any other means that creates a substantial risk of physical injury to any person. *Id.*

Appellant argues that there is no evidence that he resisted arrest by any means that created a substantial risk of physical injury. The State contends that this specific argument was not made below and is not preserved for appeal. We agree. In a nonjury trial, a motion for dismissal shall be made at the close of all of the evidence and shall state the specific grounds therefor. Ark. R. Crim. P. 33.1(b). Appellant made no argument below concerning the sufficiency of the evidence to support a conviction for resisting arrest. We affirm.

Affirmed.

GLADWIN, C.J., and WOOD and BROWN, JJ., agree.

PITTMAN and HIXSON, JJ., dissent.

SLIP OPINION

KENNETH S. HIXSON, **Judge, dissenting.** I dissent from the majority opinion only as it relates to the denial of Stutte's motion to suppress because binding federal and state supreme court case law mandates it. There is a clear line of demarcation between warrantless arrests and arrests with a warrant. That clear line is the entrance to the home.

I agree that Officer Hargis had a reasonable and constitutional basis for initiating a traffic stop based on his observation of one or more misdemeanor violations. Stutte was cited for careless and prohibited driving, although he was not cited for speeding. Hargis could legitimately initiate a traffic stop in order to determine whether Stutte was driving while intoxicated, although the officer candidly admitted that the evidence to support probable cause for arrest did not develop until the officer entered Stutte's home. The majority opinion holds that Hargis could have cited Stutte for Class A misdemeanor fleeing, although Hargis did not cite Stutte for fleeing. None of those misdemeanors, even if supported by probable cause, would provide a constitutionally sound basis for warrantless entry into Stutte's home to search, seize, or arrest Stutte. Binding precedent requires this inescapable legal conclusion.

The Fourth Amendment provides all citizens with protection from unreasonable searches and seizures. The physical entry into the home is the "chief evil" against which the wording of the Fourth Amendment is directed, and the principal means of protecting that sacred space is the warrant requirement before entry into a citizen's home for the purpose of search or arrest. *Welsh v. Wisconsin*, 466 U.S. 740 (1984); *Payton v. New York*, 445 U.S. 573 (1980). The Fourth Amendment sets a "firm line at the entrance to the house" or "home." *Welsh*, *supra*; *Payton*, *supra*. The State bears the burden of establishing that any

8

warrantless entry into the home is justified. *Welsh*, *supra*; *Payton*, *supra*; *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999). Exceptions to the warrant requirement are few and carefully delineated, and the State bears a heavy burden to overcome that requirement. *Welsh*, *supra*; *Payton*, *supra*; *Norris*, *supra*. This is as it should be in a free society.

Assuming arguendo that probable cause for arrest on any of the aforementioned misdemeanors was in existence prior to Officer Hargis's entry into Stutte's home, the Fourth Amendment would require the State to prove exigent circumstances to justify warrantless entry into the home. Those exigent circumstances are simply not present.

First-offense DWI in Arkansas, an unclassified misdemeanor, is considered a "serious" but "minor" offense as it relates to the Fourth Amendment's protections. *Norris*, *supra*. The *Norris* court specifically held:

> It is true that this Court and the legislature of this State have recognized driving while intoxicated as a serious offense. The question then becomes whether, in the statutory scheme of criminal offenses, the seriousness of DWI, first offense, rises to the level that would warrant violation of the Fourth Amendment's special protection afforded to the individual in his home, as articulated in *Payton*, *supra*, and *Welsh*. We hold that it does not.

338 Ark. at 403, 993 S.W.2d at 922.

The gravity of the crime is an important consideration when deciding whether exigent circumstances are present, and the supreme court has previously held that first-offense misdemeanor DWI does not rise to the level required to do away with the warrant requirement. *Norris*, *supra*. Once a suspected impaired driver is in the home and out of his vehicle, the State's interest in avoiding the destruction of evidence (blood-alcohol-level dissipation) and public safety (the driver potentially returning to his vehicle to reenter the

9

public roadway as a safety hazard) do not qualify as "exigent circumstances" for purposes of doing away with the requirement of a warrant before entry. *Norris*, *supra*. "Hot pursuit" is the only other potential exigent circumstance that would support entry into the home without a warrant. *Butler v. State*, 309 Ark. 211, 829 S.W.2d 412 (1992). "Hot pursuit" is not a valid exigency when the offense is "minor," nor does a valid exigency arise simply by the existence of probable cause to believe that a "serious" crime has been committed. *Id.*

The majority herein distinguishes the pertinent precedents on their facts; however, I cannot distinguish those same precedents on their constitutional principles.

The police officers had other legitimate options readily available. Specifically, the police officers could have obtained an arrest warrant from the appropriate judge and returned to Stutte's home to effectuate an arrest with a warrant. This is precisely the available option discussed by the Arkansas Supreme Court in *Butler*. The United States Supreme Court in *Welsh* held that:

> Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, the presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

466 U.S. at 750.

"Regardless of how brief or slight the intrusion, or how weighty the public interest, 'an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.'" *State v. Allen*, 2013 Ark. 35, at 5, ___

10

S.W.3d \_\_\_, \_\_\_ (citing *Brown v. Texas*, 443 U.S. 47 (1979)). However noble the law enforcement officer's intentions or distasteful Stutte's behavior, we are duty-bound to uphold the Constitution and to adhere to binding Arkansas and United States Supreme Court precedent.

For the foregoing reasons, I dissent.

PITTMAN, J., joins.

*Taylor Law Partners, LLP*, by: *William B. Putman*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.